2011 VT 21

# Catherine S. Samis v. Philip Samis

[22 A.3d 444]

No. 10-031

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Eaton, Supr. J., Specially Assigned.

Opinion Filed February 18, 2011

Motion for Reargument Denied March 21, 2011

*Benjamin W. King* of *The King Law Offices, PLLC*, Burlington, for Plaintiff-Appellee.

*William W. Cobb* of *Law Offices of William W. Cobb, PLC,* Hyde Park, for Defendant-Appellant.

¶ 1. **Johnson, J.** Husband appeals the decisions of the Orleans Family Court granting divorce, distributing property, and awarding spousal maintenance after wife's guardian filed for divorce on her behalf. Husband raises three arguments on appeal: (1) the trial court erred in denying his motion to dismiss wife's divorce action because her guardian lacks standing to initiate a divorce proceeding on her behalf; (2) the trial court erroneously allowed wife's guardian to bring and maintain a divorce action on her behalf; and (3) the trial court abused its discretion by awarding wife excessive spousal maintenance and one of their homes. We agree with husband that the lower court erred in its denial of his motion to dismiss. Accordingly, we reverse.

¶ 2. Husband and wife married in 1983 in Montreal. Husband is a Canadian citizen currently living in Toronto. Wife is a U.S. citizen and resident of Vermont. This is a second marriage for both. During the majority of their marriage, they maintained separate residences — wife in Vermont and husband in Montreal — but lived together. Husband and wife divided their time between the United States and Canada to preserve their respective residency and benefit statuses in each country. Both husband and wife are now over eighty years old. Each depends on the medical care and payment system of his or her country of citizenship.

¶ 3. Wife was diagnosed with dementia in early 2007. Wife's dementia renders her unable to make decisions in her own interest. She is unable to form new memories and does not remember current happenings after five or six minutes. Husband reacted strongly to her diagnosis, announcing that he needed to leave wife to move to Toronto and removing many things from their shared and jointly owned home in Irasburg, Vermont. At that time, wife's son from her first marriage, Gregory Morcroft, applied for guardianship of wife.

¶ 4. Following some litigation, wife's guardianship was made permanent in June 2007 by stipulation of Gregory and husband. The probate court issued a decision approving this stipulation and appointing Gregory guardian for wife with all the powers of guardianship. The stipulation provided that guardian and husband would cooperate in financial and Medicaid planning for wife,

anticipating that wife's financial resources might be insufficient to provide for her care.

¶ 5. Guardian first filed a complaint for divorce on behalf of wife in August 2007. Relations between guardian and husband, already tense, worsened. Guardian filed a motion for injunctive relief, which the probate court granted, restricting husband's contact with wife. Husband filed a motion to set aside the stipulation and decision appointing guardian and a motion for modification of the guardianship. The probate court denied both. Husband and guardian's relationship deteriorated to the point that they were unable to make joint decisions regarding wife. Most relevantly, guardian had difficulty obtaining from husband the financial support necessary for wife's care. Guardian sought a divorce for wife to permit her to apply for Social Security benefits on the account of her first husband, which she was barred from doing while married to husband.

¶ 6. In September 2007, husband filed a motion to dismiss the divorce complaint, arguing that wife's guardian did not have authority under the guardianship statute, 14 V.S.A. § 3069, to initiate a divorce proceeding on her behalf. Responding to wife's financial needs for medical care, the family court denied the motion to dismiss and allowed the divorce action to proceed. The court concluded that, despite the absence of authorization in § 3069, Vermont Rule for Family Proceedings 4(b)(1)(A) allows guardians to file for divorce on behalf of persons under guardianship. Moreover, the court determined that public policy required that guardian be authorized to bring the divorce action on wife's behalf. We denied husband's request to take an interlocutory appeal on this matter.

¶ 7. Having decided that the divorce complaint could stand, the family court then bifurcated the contested divorce proceedings, first making a determination concerning the marriage and subsequently determining the property and spousal maintenance issues. Following evidentiary hearings on the matter of the divorce, the court granted the no-fault divorce petition under 15 V.S.A. § 551(7), finding that the guardian, on behalf of wife, established that she and husband had "lived separate and apart for a period of six consecutive months, the resumption of marital relations not being reasonably probable." The court explained that a no-fault divorce did not require that both parties desire divorce, and reiterated that, per its decision on the motion to dismiss, wife had

a guardian capable of bringing this divorce action and of representing her in this matter.

¶ 8. After additional hearings, the court issued its decision regarding property distribution, spousal maintenance, and attorney's fees. The court awarded the entire interest in the Irasburg home to wife. Although husband and wife jointly acquired and owned this asset, the court emphasized that the property was maintained as wife's home. Because the court "[did] not believe that [husband would] be cooperative toward timely payment of his spousal maintenance obligation" based on husband's past behavior, it awarded wife a lump-sum award of spousal maintenance in the amount of $250,000, attorney's fees of $20,000, and $20,000 for past-due maintenance under the court's interim order. This appeal followed.

¶ 9. Husband contends that, because guardian lacks authority under the statute delineating the powers of a guardian, 14 V.S.A. § 3069, to initiate a divorce proceeding on behalf of a person under guardianship, the trial court erred in denying his motion to dismiss the divorce petition.[1] The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is to test the law of the claim, not the facts that support it. *Powers v. Office of Child Support*, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002); see V.R.C.P. 12(b)(6). A motion to dismiss

---

[1] Wife argues that husband did not preserve for review his argument that the family court erroneously allowed wife's guardian to bring and maintain a divorce action on behalf of wife because Title 15, which governs divorces, does not authorize a guardian to do so. We agree that husband did not explicitly make this Title 15 argument below, *Progressive Ins. Co. v. Brown ex rel. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 ("[I]n order to rely upon an argument on appeal, an appellant must properly preserve it by presenting it to the trial court with specificity and clarity." (quotation omitted)), but we note that Title 15, chapter 11 was necessarily implicated by the court's decision that a guardian can initiate a divorce proceeding. See *Vt. Built, Inc. v. Krolick*, 2008 VT 131, ¶ 10, 185 Vt. 139, 969 A.2d 80 (explaining that the preservation rule is satisfied when the trial court had "a fair opportunity to consider, evaluate and rule upon" the question raised on appeal (quotation omitted)). We confine our analysis to whether the trial court erred in finding that Rule 4(b)(1)(A) allows a guardian to initiate a divorce even though "14 V.S.A. § 3069 does not list filing a complaint for divorce as one of the guardian's enumerated powers," while observing that no part of Title 15 grants a guardian authority to initiate a divorce on behalf of a person under guardianship. Indeed, wife has not argued, apart from labeling husband's Title 15 argument "baseless," that the language of Title 15 *does* give a guardian authority to maintain a divorce proceeding.

should be granted only when it is beyond doubt that there exist no facts or circumstances that would entitle the nonmoving party to relief. *Powers*, 173 Vt. at 395, 795 A.2d at 1263. On review of the trial court's determination of the motion to dismiss, we assume the truth of all factual allegations pleaded in the complaint and all reasonable inferences that may be derived from the pleadings. *Elkins v. Microsoft Corp.*, 174 Vt. 328, 330, 817 A.2d 9, 12 (2002). To the extent that our review of the trial court's decision involves questions of statutory construction and, thus, questions of law, it is nondeferential and plenary. *Id.*

¶ 10. The court below acknowledged that 14 V.S.A. § 3069 does not specify filing a complaint for divorce to be one of the guardian's powers. It relied instead on Vermont Rule for Family Proceedings 4(b)(1)(A). Rule 4(b)(1)(A) states:

> The complaint in an action for divorce . . . shall be signed and sworn to by the plaintiff, if of sound mind and of the age of 16 years. Otherwise it may be signed and sworn to by the guardian, guardian ad litem or next friend of the plaintiff.

Because wife has been adjudicated mentally incompetent, the family court interpreted Rule 4(b)(1)(A) to authorize the guardian to sign the divorce complaint on her behalf. According to the court, this rule "indicates a willingness on behalf of the Court to allow a guardian to initiate a divorce proceeding on behalf of a ward." The court found no conflict between that rule and the omission of this power from 14 V.S.A. § 3069's enumerated list of guardian powers. In addition, the court concluded that public policy requires that a guardian have authority to initiate a divorce on behalf of a person under guardianship, reasoning that it would be unfair for a person under guardianship to lose her ability to seek a divorce while her spouse retains that ability. The court found that the guardian's legal obligation with respect to wife overcame any possible objections about the guardian's potential conflict of interest.

¶ 11. Husband argues that the trial court improperly interpreted Rule 4(b)(1)(A), allowing it to expand the scope of 14 V.S.A. § 3069. We agree. The Vermont Constitution gives the Court rule-making authority. Vt. Const. ch. II, § 37 ("The Supreme Court shall make and promulgate rules governing the administration of all courts, and shall make and promulgate rules governing

practice and procedure in civil and criminal cases in all courts. Any rule adopted by the Supreme Court may be revised by the General Assembly."); see *State v. Corliss*, 145 Vt. 169, 172, 484 A.2d 924, 925 (1984). Section 1 of Title 12 cautions, however, that "[t]he rules thus prescribed or amended shall not abridge, enlarge or modify any substantive rights of any person provided by law." Although the rules we create have the force and effect of law, they cannot create substantive rights not created by the Legislature. Contrary to the family court's analysis, the authority for a guardian to initiate a . divorce on behalf of a person under guardianship cannot come solely from a procedural rule promulgated by this Court.[2] Because there is no independent authority in Rule 4(b)(1)(A), the trial court's decision may be affirmed only on statutory grounds.

¶ 12. Section 3069(c) of Title 14 enumerates the specific powers that can be granted to a guardian: to exercise general supervision over the person under guardianship; to seek, obtain, and give or withhold consent to medical or dental treatment; to exercise general financial supervision over the income and resources of the person under guardianship; to approve or disapprove of most contracts the person under guardianship wishes to make; to approve or disapprove of the sale or encumbrance of real property of the person under guardianship; and to obtain legal advice and to commence or defend against court actions in the name of the person under guardianship. The only place in the statute that the power to initiate a divorce on behalf of a person under guardianship could come from is the "power to obtain legal advice and to commence . . . court actions in the name of the person under guardianship." 14 V.S.A. § 3069(c)(6). The question is whether this general grant of authority to the guardian includes the specific power to bring a divorce petition.

¶ 13. A century and a half ago, we held that "[t]he right to bring [a divorce] petition is strictly personal." *Richardson v. Richardson*, 50 Vt. 119, 121-22 (1877) (holding that because right to bring divorce petition is strictly personal, person under only financial guardianship can bring petition in own name). We have not revisited this particular issue in modern times, but we have

---

[2] Because we decide that Rule 4(b)(1)(A) cannot provide authority not otherwise present in the guardianship statute, we do not address the family court's interpretation of its language.

more recently acknowledged that marriage is a " 'vital personal right[].' " *Baker v. State*, 170 Vt. 194, 220, 744 A.2d 864, 883 (1999) (quoting *Loving v. Virginia*, 388 U.S. 1, 12 (1967)).

¶ 14. The majority of appellate courts in other jurisdictions that have interpreted similar statutes have held that, absent explicit statutory language authorizing a guardian to initiate a divorce action on behalf of a person under guardianship, general guardianship statutes do not give a guardian such authority. The New York Court of Appeals, for example, has held that guardians may not maintain divorce actions on behalf of incompetent spouses. *Mohrmann v. Kob*, 51 N.E.2d 921, 925 (N.Y. 1943). The court stated that the New York statute granting a guardian the power to maintain "any action" in the name of the ward did not include an action for divorce because the legislature had always treated divorce separately and allowing a guardian to maintain a divorce action would "invade[] a field reserved exclusively for the legislative function." *Id.* at 924. It highlighted the key role that volition and choice play in both the creation and dissolution of a marriage. *Id.* Similarly, in *Murray ex rel. Murray v. Murray*, the South Carolina Supreme Court adopted "the majority rule" that a guardian may not bring an action for divorce on behalf of a person under guardianship. 426 S.E.2d 781, 784 (S.C. 1993). As that court emphasized:

> Although there are statutes in practically every jurisdiction which give a guardian the general authority to maintain actions on behalf of an incompetent, it is generally held that these statutes do not apply to divorce actions unless the statute expressly so states. The theory underlying the majority view is that a divorce action is so strictly personal and volitional that it cannot be maintained at the pleasure of a guardian, even if the result is to render the marriage indissoluble on behalf of the incompetent.

*Id.* at 783-84 (citations omitted). The Court of Appeals of Kentucky held in *Johnson v. Johnson* that a guardianship statute that excepted no specific types of action did not authorize a guardian of a ward to bring a divorce action on his behalf. 170 S.W.2d 889, 890 (Ky. 1943). According to the court, the legislature, in conferring this general authority on the guardian, did not intend to vest a guardian with power over the ward's strictly personal and volitional affairs to the extent of controlling his marital status. *Id.*

¶ 15. The jurisdictions that do allow guardians to sue for divorce on behalf of persons under guardianship have generally relied on statutory language granting such power. The New Hampshire Supreme Court recently held that a guardian could maintain a divorce action on behalf of a ward because the person under guardianship had initiated the divorce petition before he was deemed incompetent and because of a "catchall" provision present in the New Hampshire guardianship statutory scheme that authorized the probate court to impose additional duties upon a guardian, including the authority to exercise his right to divorce. *In re Salesky*, 958 A.2d 948, 954-55 (N.H. 2008). The Supreme Judicial Court of Massachusetts has held that a Massachusetts statute specifically allowing a guardian or next friend to sign a divorce libel authorized guardians to file divorce actions on behalf of legally incompetent individuals. *Cohn v. Carlisle*, 37 N.E.2d 260, 262 (Mass. 1941); *Cowan v. Cowan*, 1 N.E. 152, 152 (Mass. 1885); *Garnett v. Garnett*, 114 Mass. 379, 380 (1874). This explicit statutory directive led the court in *Cowan* to reject the argument that a divorce should not be granted because an incompetent spouse had no volition. 1 N.E. at 152.

¶ 16. Even those courts that have held that guardians can petition for divorce without explicit statutory authorization have acknowledged that their decisions are contrary to the majority rule. See, e.g., *Ruvalcaba ex rel. Stubblefield v. Ruvalcaba*, 850 P.2d 674, 679-81 (Ariz. Ct. App. 1993) (permitting guardian to bring divorce action while acknowledging that majority of jurisdictions have held divorce is strictly personal and cannot be initiated by guardian); *In re Marriage of Gannon*, 702 P.2d 465, 467 (Wash. 1985) (holding that as general rule guardian cannot dissolve marriage of person under guardianship because marriage is so personal, but there are circumstances where court may authorize guardian to seek dissolution).

¶ 17. Like the majority of jurisdictions around the country, we continue to conclude that the right to end a marriage through divorce is volitional and personal such that the Legislature did not intend, through a general grant of authority, to permit it to be carried out by a guardian. If we were to imply this power, we would encroach on an area that the Legislature has seen fit to address by statute, and without any airing of the multiple issues of public policy that might be relevant to the question. Without specific authority in 14 V.S.A. § 3069(c)(6),

therefore, guardian was without power to file a divorce on wife's behalf, and husband's motion to dismiss should have been granted. Insofar as wife's guardian has had difficulty obtaining financial support and cooperation from husband, guardian may petition the family division for an order of support or another appropriate order. Because we reverse the grant of divorce, we need not reach husband's additional arguments regarding property division and spousal maintenance.

*Reversed.*